UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**AARON KITZLER**                                               **CIVIL ACTION**

**VERSUS**                                                       **NO. 22-1263**

**TIM HOOPER, WARDEN**                                          **SECTION "B"(5)**

**ORDER & REASONS**

Before the Court are Aaron Kitzler's petition for habeas corpus relief (Rec. Doc. 3-1), the Report and Recommendation recommending dismissal of Kitzler's petition (Rec. Doc. 9), and petitioner's objections to the Report and Recommendations (Rec. Doc. 10). After careful consideration and for the reasons discussed below,

**IT IS ORDERED** that the Magistrate Judge's Report and Recommendation (Rec. Doc. 9) is hereby **ADOPTED IN ITS ENTIRETY** as the opinion of the Court.

**IT IS FURTHER ORDERED** that the petition for writ of habeas corpus (Rec. Doc. 3-1) is hereby **DISMISSED WITH PREJUDICE.**

**FACTS AND PROCEDURAL HISTORY**[1]

In June 2013, petitioner Aaron Kitzler was charged by grand jury indictment with one count of aggravated rape of a person under thirteen years of age (K.K.) pursuant to La. R.S. 14:42 A(4), and

---

[1] A more thorough recitation of the relevant facts and procedural history are outlined in the Magistrate Judge's Report & Recommendation. Rec. Doc. 9. Finding no issue with the included "Procedural History," the Court adopts the Magistrate Judge's facts in this Order and Reasons with minor edits tailored to "Petitioner's Objection to Magistrate Judge's Report and Recommendation." Rec. Doc. 9 at 1-11; *see also* Rec. Doc. 10.

1

one count of molestation of a juvenile (A.C.) pursuant to La. R.S. 14:81.2. Rec. Doc. 9 at 1-2.[2] On October 29, 2014, a jury found petitioner guilty of aggravated rape, but not guilty of molestation of a juvenile. *Id*. Petitioner is currently a state prisoner at the Louisiana State Penitentiary in Angola, Louisiana. *Id*.

The Report and Recommendation (Rec. Doc. 9 at 2-4) cited the Louisiana First Circuit Court of Appeal's summary of the facts[3] presented at trial:

> K.K. (the victim) is the daughter of L.K., and the former stepdaughter of defendant. K.K. was born on March 14, 2000. L.K. and defendant began dating in 2004, and they married in October of 2005. They divorced in May of 2014.
>
> At trial, K.K. testified that defendant forced her to engage in oral and vaginal intercourse, beginning when she was nine years old while living in Mount Hermon, Louisiana. She stated that defendant raped her multiple times over the course of three years. According to K.K., these incidents would occur on nights when her mother was at work. She testified that defendant told her not to tell anyone, or he would beat her "half to death." K.K. described defendant's private area as being shaved. K.K. repeated the substance of these allegations of abuse in two recorded interviews that were introduced at trial—a Children's Advocacy Center (CAC) forensic interview with JoBeth Rickels, and a patient medical history with Nurse Anne Troy at the Audrey Hepburn Care Center.

---

[2] In accordance with La. R.S. 46:1844(W), the victim and her immediate family members are referred to by their initials throughout this Order and Reasons. Rec. Doc. 9 at 2 n.4

[3] In the current case, the charged offenses concern two separate alleged victims, K.K. (count one) and A.C. (count 2), and two different periods of time. Rec. Doc. 9 at 2 n.3. Because defendant was found not guilty on count two, the evidence presented at trial relating to that offense is not detailed in the Magistrate Judge's Report and Recommendation (Rec. Doc. 9), except where it may be relevant to issues concerning the conviction on count one. *Id.*

2

K.K. testified at trial that the abuse stopped when, on November 18, 2012, she told her aunt (T.C.) and a family friend, Michelle Almanza, about having been raped. K.K. made her report of abuse to the sheriff's office on that same date. According to K.K., she had previously tried to tell her mother, grandparents, and other family members about the abuse, but they did not believe her.

L.K. testified at trial regarding K.K's prior allegations of abuse. She stated that on two occasions prior to November 18, 2012, K.K. said that defendant had been messing with her. According to L.K., she told K.K. both times that she would have to involve the police, at which point K.K. recanted her statement. L.K. explained that on the first occasion, K.K. made the accusation because she was mad that she was being forced to leave a friend's house, and she later admitted that she lied about defendant touching her. On the second occasion, K.K. made the allegation to her grandmother and aunt while she was at a campground for a family gathering. Both times, L.K. presented the allegations to defendant, and he denied ever having touched K.K. At trial, L.K. testified that she believed K.K's instant allegations of abuse because K.K. did not change her story this time, and she never recanted despite having been moved into a foster home. L.K. confirmed that defendant kept his private area shaved. On cross-examination, L.K. testified that she discovered at one point during her marriage to defendant that he had been seeing Almanza behind her back. She was aware that they kissed, but unsure if they had engaged in any sexual behavior. According to Almanza's trial testimony, A.C. (the alleged victim in count two) reported in 2009, when she was sixteen, that she had been having oral and vaginal sex with defendant. Almanza allegedly confronted defendant about A.C., but neither she nor A.C. reported defendant to the police. Almanza testified that on November 18, 2012, K.K. told her that defendant had been sexually abusing her. She testified that she asked K.K. to describe defendant's private area, which she did. According to Almanza and A.C.'s own trial testimony, A.C. confirmed the appearance of defendant's private area based on K.K's description. On cross-examination, Almanza denied ever dating or sleeping with defendant.

Defendant testified at trial . . . Defendant categorically denied ever having touched K.K. in an

3

inappropriate way, including forcing her to engage in any type of sexual intercourse. On cross examination, defendant admitted that he kept his private area shaved. After deliberating, the jury returned verdicts finding defendant guilty of the aggravated rape of K.K., but not guilty of molesting A.C.[4]

After trial, K.K. recanted her testimony and the defense filed a motion for a new trial. *Id*. at 4. In her signed and notarized affidavit, K.K. claimed Kitzler never molested her or touched her inappropriately and that Almanza forced or coerced her into making the false allegations against him. Rec. Doc. 3-2 at 47-48; Rec. Doc. 9 at 4. K.K. later wrote a letter, dated June 29, 2016, to Kitzler in prison restating his innocence. Rec. Doc. 3-2 at 44; Rec. Doc. 9 at 4. In January, March and April of 2015, the trial court held three separate hearings before denying the motion for new trial. Rec. Doc. 9 at 4.

On direct appeal, the appellate court denied the motion for new trial without oral or written reason, and the trial court sentenced Kitzler to life imprisonment without benefit of probation, parole, or suspension of sentence. *Id*. at 4-6.[5]

After his motion to reconsider sentence was denied, Kitzler appealed by arguing the trial court erred in denying his motion for new trial. *Id*. at 7. On June 14, 2016, the Louisiana First

---

[4] *State v. Kitzler*, 2015 KA 1517, 2016 WL 3746380, at *1 (La. App. 1 Cir. 2016); *see also* Rec. Doc. 9 at 4 n.6.
[5] A summary of the evidence from the new trial hearing can be found in the Report and Recommendation. *See* Rec. Doc. 9 at 4-6; *Kitzler*, 2015-1517, 2016 WL 3746380, at *3-4.

Circuit Court of Appeal affirmed his conviction and sentence *Id*. On December 5, 2016, the Louisiana Supreme Court denied his application for writ of certiorari. *Id*.

On December 12, 2017, Kitzler's post-conviction counsel, Samuel H. Winston, filed an application for post-conviction relief in the state district court. *Id*. He raised four claims for relief. Rec. Doc. 9 at 7-8.[6]

In April 2018, Kitzler's counsel filed a memorandum in support; supplementing the first two claims and requesting more time to supplement claims three and four. *Id* at 8. Later, on December 7, 2018, counsel filed a supplemental memorandum in support of claim three, alleging ineffective assistance of trial counsel, and only a "reservation of rights" as to claim four (the *Brady* claim). *Id*. In May 2020, Kitzler's counsel filed an application to inspect the jury polling slips which was granted but did not lead to an additional claim for relief. *Id*. at 9. Finally, on July 20, 2020, Kitzler's counsel was prepared to proceed with a completed application after reviewing the polling slips and the records for the case in the State's possession. *Id*. The State responded around October 14, 2020. *Id*.

---

[6] The arguments follow: (1) newly discovered evidence indicated K.K. renewed and still maintained her recantation of her original trial testimony; (2) newly discovered evidence suggested K.K. was not competent to testify at trial; (3) petitioner was denied effective assistance of counsel for failing to investigate conflicting stories of witnesses and failing to consult with and hire a competing expert on child interview techniques; and (4) petitioner was denied due process under *Brady v. Maryland* when the State failed to disclose conflicting witness statements. Rec. Doc. 9 at 7.

On January 13, 2021, the state district court denied relief with written reasons. *Id*. The court rejected the first claim as repetitive, citing the direct appeal, and alternatively found it lacked merit. *Id*. The court rejected as meritless the second and third claims concerning the newly discovered evidence of Dr. Pellegrin's report about K.K.'s competency and trial counsel's ineffectiveness. *Id*. at 9 and 10. Last, the district court rejected the fourth (*Brady*) claim, which counsel failed to supplement with evidence, as entirely unsupported and meritless. *Id*. On October 1, 2021, the Louisiana First Circuit Court of Appeal denied petitioner's related application for supervisory writs without cited reasons. *Id*. at 10. On March 2, 2022, the Louisiana Supreme Court denied relief and found that petitioner failed to show he received ineffective assistance of counsel or that the State withheld material exculpatory evidence under *Brady*. *Id*. For the remaining claims, the Louisiana Supreme Court found petitioner failed to meet his burden of proof and/or the claims were repetitive. *Id*.

In May 2022, Kitzler submitted the instant federal application for habeas corpus relief under 28 U.S.C. § 2254. Rec. Doc. 3. He asserted two grounds for relief.[7] Rec. Doc. 9 at 10.

---

[7] The arguments included: (1) "newly discovered evidence indicates that K.K., the alleged victim, has renewed and still maintains her recantation of her original trial testimony in violation of the Fifth, Sixth and Fourteenth Amendment to the Constitution" and (2) "new discovered evidence that K.K., the

6

The State did not assert the petition was untimely or that petitioner failed to exhaust available state-court remedies. Rec. Doc. 8 at 6; Rec. Doc. 9 at 11. Instead, the State argued the claims did not merit relief, and Kitzler did not file a reply to the State's response. Rec. Doc. 9 at 11.

On May 2, 2023, Magistrate Judge North recommended petitioner Kitzler's application for federal habeas corpus relief be dismissed with prejudice. *Id*. at 1. On May 15, 2023, Kitzler timely objected to the Magistrate Judge's Report and Recommendation. Rec. Doc. 10.

## LEGAL STANDARD

### A. Federal Habeas Corpus Standard[8]

"Title 28 U.S.C. § 2254(d)(1) and (2), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides the applicable standards of review." Rec. Doc. 9 at 11. "A state court's purely factual determinations are presumed to be correct and a federal court will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in the light of the evidence presented in the State court proceeding.'" Rec. Doc. 9 at 11 (citing 28 U.S.C. § 2254(d)(2) and 28 U.S.C. § 2254(e)(1))("In a proceeding

---

alleged victim in this case, was not competent to testify at trial." Rec. Doc. 9 at 10-11 (citing Rec. Doc. 3 at 4-6).
[8] The standard of review is adopted from Magistrate Judge North's Report and Recommendation. Rec. Doc. 9 at 11-13.

instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. **The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence**.") (emphasis added). "With respect to a state court's determination of pure questions of law or mixed questions of law and fact, a federal court must defer to the decision on the merits of such a claim unless that decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Rec. Doc. 9 at 11-12 (citing 28 U.S.C. § 2254(d)(1)).

"The contrary to and unreasonable application clauses of § 2254(d)(1) have independent meaning." Rec. Doc. 9 at 12 (quoting *Bell v. Cone*, 535 U.S. 685, 694 (2002)) (internal citations omitted). "A state court decision is 'contrary to' clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the United States Supreme Court and nevertheless arrives at a result different from United States Supreme Court precedent." Rec. Doc. 9 at 12 (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.), *cert. denied*, 131

8

S.Ct. 294 (2010)). "An 'unreasonable application' of United States Supreme Court precedent occurs when a state court 'identifies the correct governing legal rule . . . but unreasonably applies it to the facts of the particular state prisoner's case.'" Rec. Doc. 9 at 12 (citing *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 572 U.S. 415, 426 (2014)) (internal citations omitted).

"It is well-established that 'an unreasonable application is different from an incorrect one.'" Rec. Doc. 9 at 12 (quoting *Bell*, 535 U.S. at 694). "A state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief." Rec. Doc. 9 at 12 (citing *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir. 2011)) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."). "Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable under the AEDPA." Rec. Doc. 9 at 12-13 (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)) (internal citations omitted). "Section 2254(d) preserves authority to issue the writ in cases where there is '*no possibility* fairminded jurists could disagree that the state court's decision conflicts with United States Supreme Court precedents.'" Rec. Doc. 9 at 13 (quoting *Harrington*, 562 U.S. 86,102 (2011) (emphasis in Report and Recommendation); *see also Renico v. Lett*, 559 U.S. 766, 779 (2010))

9

("AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

"Review under Section 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits." Rec. Doc. 9 at 13 (citing *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)). "With respect to claims that have not been adjudicated on the merits by the state courts, a federal court does not conduct review pursuant to 28 U.S.C. § 2254(d)." Rec. Doc. 9 at 13. "Instead, the Court applies a *de novo* standard of review." Rec. Doc. 9 at 13 (citing *Hoffman v. Cain*, 752 F.3d 430, 437 (5th Cor. 2014); *In Re: Paredes*, 587 F. App'x 805, 814 (5th Cir. 2014)). The district court may adopt the Magistrate Judge's findings and conclusions if the factual and legal bases supporting the ruling are not clearly erroneous or contrary to law. *See* 28 U.S.C. § 636(b)(1)(A) (2012); *Thomas v. Arn*, 474 U.S. 140, 149 (1985).

## ANALYSIS

### A. Objection to the denial of a hearing

Kitzler first asserts his due process was violated because K.K. was never asked "if she had told anyone from the (State) prosecution that her initial report was false to support the *Brady* claim." Rec. Doc. 10 at 1. Kitzler relies on *Hollingshead v. Wainwright*, 423F.2d (5th Cir. 1970) and *United States v. Henderson*, 19 F.3d 917 (5th Cir. 1994) to support his assertion that "[t]he

failure to grant a hearing when one is essential to develop the facts fully and fairly is a denial of due process." Rec. Doc. 10 at 2. He further argues under that under 28 U.S.C. § 2254(e)(2), a judge may grant an evidentiary hearing "when the petitioner shows that a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner." *Id*.

Petitioner fails to show support for his first objection under § 2254(e)(2). Section 2254(e)(2) provides that in circumstances such as this one, if petitioner "has failed to develop the factual basis of a claim in State court proceedings," a federal court may only hold "an evidentiary hearing on the claim" in two limited scenarios.[9] Here, neither of the exceptions are met. The Supreme Court has clarified § 2254(e)(2) "applies when a prisoner 'has failed to develop the factual basis of a claim,' *i.e.*, is 'at fault' for the undeveloped record in state court." *Shinn v. Ramirez*, 142 S. Ct. 1718, 1724 (2022); (citing *Williams v. Taylor*, 529 U.S. 420, 432). In addition, the petitioner must show, by clear

---

[9] The claim must rely on either (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence. *See* § 2254(e)(2)(i),(ii).

11

and convincing evidence, further fact-finding would demonstrate that he is innocent of the crime charged. *Id*.

Kitzler's objection to the denial of a hearing is repetitive and fails to raise a valid argument. As noted in the Magistrate Judge's Report and Recommendation (Rec. Doc. 9), on post-conviction review, Kitzler renewed the claim that "he was entitled to a new trial or evidentiary hearing based on newly discovered evidence" and claimed the "State withheld *Brady* material in the form of conflicting witness statements."[10] Rec. Doc. 9 at 18. Further, the state courts previously denied "his newly discovered evidence claim as repetitive, because it was fully considered and rejected on direct appeal, and alternatively, as meritless for essentially the same reasons as those stated by the court on direct appeal."[11] Rec. Doc. 9 at 19. This Court agrees with the Magistrate Judge's finding that Kitzler's *Brady* claim was denied on the merits because he continuously "failed to show that the state withheld material exculpatory evidence." *Id*.

Further, the Magistrate Judge correctly addressed this claim when assessing the record. Petitioner had ample time to uncover sufficient *Brady* evidence, but he failed to ever present anything

---

[10] Kitzler cited K.K's affidavit and her more recent letter to him in prison.
[11] Petitioner did not claim that the State "knowingly allowed perjured testimony under *Napue*. The record confirms that he did not mention or cite to *Napue* at any state-court level, nor did he raise any other federal constitutional claims with regard to her recantation. Thus, on post-conviction, he exhausted his claim that the state courts improperly denied his motion for new trial based on newly discovered evidence and that the State violated *Brady*." Rec. Doc. 9 at 19.

in the state courts, or here, to "show that the prosecution had knowledge about K.K.'s false testimony."[12] Rec. Doc. 9 at 30. The State did not withhold evidence it did not possess because it only surfaced after trial. *Id*. at 31. Since this knowledge was not known to the prosecution at the time of the trial, the denial of the *Brady* claim "was not contrary to or an unreasonable application of the United States Supreme Court precedent." *Id*. Explaining further, controlling federal law "dictates the denial of relief" on petitioner's alleged "independent constitutional claims under *Brady* and *Napue/Giglio*." *Id*. at 23. Therefore, petitioner fails to develop and sufficiently rebut the Magistrate Judge's Report and Recommendation (Rec. Doc. 9) for his objection to a denial of a hearing (Rec. Doc. 10 at 1).

**B. Objection to failure to properly apply the standard of review**

Contrary to petitioner's objection, the Magistrate Judge applied the correct standard of review.[13] The Magistrate Judge cited 28 U.S.C. § 2254(b)(2) to permit the Court to deny relief on the merits of unexhausted claims. Rec. Doc. 9 at 14. Petitioner

---

[12] "As the state district court observed when denying the claim, in the three years since the post-conviction relief application was filed and more than two years since counsel for Kitzler referenced 'missing documents' to establish that the State had access to material evidence that it failed to disclose, no such proof existed, and 'waiving the red flag of *Brady* is not sufficient to establish a violation of the State's obligation to provide discovery.'" Rec. Doc. 9 at 30.

[13] Because the *Napue/Giglio* and "actual innocence" claims were not fairly presented, the state courts did not adjudicate the federal constitutional claims on the merits. *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995); Rec. Doc. 9 at 14.

13

failed to bring any specific objection here, other than claiming the Magistrate Judge failed to apply the proper standard under 28 U.S.C. § 2254. Rec. Doc. 10 at 2.

Petitioner also cited § 2254 (d), with support from Supreme Court precedent[14] (Rec. Doc. 10 at 3), by offering a brief summary of when a court may issue a federal habeas writ under the "contrary to" and "unreasonable application" clauses, but provides nothing new to offer a valid objection to the Magistrate's Report and Recommendation (Rec. Doc. 9). Specifically, the argument that "petitioner objects where the magistrate erred in its application of these standards" in the Report and Recommendation (Rec. Doc. 9) is vague. *Id*. at 3. Petitioner does not argue or add to this objection other than making the claim that the Magistrate Judge erred.

The Magistrate Judge carefully and correctly applied § 2254 along with binding case authority and precedent in the Analysis section beginning on pg. 13 in the Report and Recommendation. (Rec. Doc. 9 at 13-37). First, the *Brady* claim did not "involve a question of federal or constitutional law and merely requests review of a state-law claim, it is not proper on federal habeas review." *Id*. at 19. Second, Kitzler's claim of "actual innocence" based on K.K's recantation was not valid, because "no precedent

---

[14] Petitioner cites a section from the Supreme Court Case *Bell v. Cone*, 535 U.S. 685, 694 (2002) (internal citations omitted); Rec. Doc. 10 at 3 n.1.

14

exists for a freestanding 'actual innocence' claim affording petitioners federal habeas corpus relief."[15] *Id*. at 20. Third, the Magistrate Judge correctly applied *Pierre v. Vannoy*[16] (Rec. Doc. 9 at 24-29) to petitioner's claim that he was denied a fair trial and his conviction violated due process because "K.K. now maintains that she testified falsely at trial that he raped her." (Rec. Doc. 9 at 23).

In *Pierre*, the victim was a minor who was raped by Pierre multiple times and testified at trial that he performed different sexual acts with her. Rec. Doc. 9 at 24 (citing *Pierre v. Vannoy*, Civ. Action 16-1336, 2016 WL 9024952 (E.D. La. Oct. 31, 2016), *adopted in part and relief granted*, 2017 WL 2267195 (E.D. La. May 23, 2017)). The victim testified she was not sexually active with anyone else but then later recanted this statement, and Pierre filed a federal application for habeas relief given the victim's false testimony at trial. *Id.* at 24-25. In reviewing Pierre's petition, the court applied controlling federal precedent and denied the petition after thoroughly analyzing claims asserting actual innocence, denial of due process and a fair trial,

---

[15] "United States Fifth Circuit precedent likewise precludes his freestanding innocence claim." *Reed v. Stephens*, 739 F.3d 753, 766 (5th Cir. 2014) (citing *In re Swearingen*, 556 F.3d 344,348 (5th Cir. 2009); *Foster v. Quarterman*, 466 F.3d 359, 367 (5th Cir. 2006)("[A]ctual-innocence is not an independently cognizable federal-habeas claim."); *Matheson v. United States*, 440 F. App'x 420,421 (5th Cir. 2011); Rec. Doc. 9 at 20 n.38.

[16] *Pierre v. Vannoy*, Civ. Action 16-1336, 2016 WL 9024952 (E.D. La. Oct. 31, 2016), *adopted in part and relief granted*, 2017 WL 2267195 (E.D. La. May 23, 2017); *see also Pierre v. Vannoy*, 891 F.3d 224 (5th Cir. 2018), *cert. denied*, 139 S.Ct. 379 (2018); Rec. Doc. 9 at 24-29.

15

violations under *Brady* and *Napue*, and denial of the right of confrontation. *Id.* at 25. Specifically, the court "found 'no indication that the State, either through prosecutorial conduct or omission or through the court's exclusion of evidence, was involved in the alleged due process violation in any way,' thus creating a 'substantial barrier' to any constitutional due process violation under existing federal precedent." Rec. Doc. 9 at 25 (quoting *Pierre*, 2016 WL 9024952, at *13). "[B]ecause the newly discovered evidence of the victim's untrustworthiness establishes that he did not receive a fundamentally fair trial," the court "was bound by controlling federal law that would not allow for relief unless the State had been complicit in the false testimony." Rec. Doc. 9 at 25 (quoting *Pierre*, 2016 WL 9024952, at *17-18).

Continuing *Pierre*, the District Judge rejected the recommendation and granted the petition for habeas relief, but it was overturned by the Unites States Fifth Circuit Court of Appeals. Rec. Doc. 9 at 26 (citing *Pierre v. Vannoy*, 891 F.3d 224 (5th Cir. 2018), *cert. denied*, 139 S.Ct. 379 (2018)). The Fifth Circuit held, "based on controlling United States Supreme Court precedent[17],

---

[17] Quoting *Pierre*, "Indeed, as the Supreme Court has held on numerous occasions, it is not an unreasonable application of clearly established federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." *Knowles v. Mirzayance*, 556 U.S. 111, 121–23 (2009) (internal citations omitted); *see also Wright v. Van Patten*, 552 U.S. 120, 123–26 (2008) (no unreasonable application when Supreme Court "cases give no clear answer to the question presented, let alone one in [petitioner's] favor") (citing *Carey v. Musladin*, 549 U.S. 70, 77 (2006)); *Gomez v. Thaler*, 526 Fed.Appx. 355, 359 (5th Cir. 2013) ("Because no decision of the Supreme Court

16

which has never held that a conviction violates due process when a victim testifies falsely if the State did not know and should not have known that the testimony was false, Pierre could not show that the state courts unreasonably applied clearly established federal law as determined by the Supreme Court." Rec. Doc. 9 at 26 (citing *Pierre*, 891 F.3d at 228-29 (5th Cir. 2018)).

The court further applied the 5th Circuit's comparison of *Pierre* to a supporting case, *Kinsel v. Cain*, "where the Court had observed that clearly established Supreme Court precedent demands proof that the prosecution made knowing use of perjured testimony to establish a constitutional violation." Rec. Doc. 9 at 26 (citing *Pierre*, 891 F.3d 224 (5th Cir. 2018)); *see also Kinsel v. Cain*, 647 F.3d 265, n.26 (5th Cir. 2011) (internal citations omitted). In the Fifth Circuit's comparison, the court held it "could not say that the state court unreasonably applied federal law in determining that Kinsel's due process rights were thus not violated because the State did not know that the victim was lying at trial." Rec. Doc. 9 at 27 (quoting *Pierre*, 891 F.3d at 229) (internal citations omitted). Therefore, provided the binding authority detailed in the Report and Recommendation (Rec. Doc. 9), the Magistrate Judge properly applied *Pierre* to petitioner's claim of

---

has addressed the issue presented before us, it cannot be said that the state court unreasonably applied clearly established Federal law.").

denial of a hearing, because of K.K.'s recantation of her testimony after trial.

In addition, the Magistrate Judge correctly assessed petitioner's claim of the victim's competency. *See* Rec. Doc. 9 at 33. If claims do not involve a question of federal or constitutional law, "and merely dispute the correctness of a ruling under state law," then the "claims fall outside the scope of federal habeas corpus review." Rec. Doc. 9 at 33 (citing *Haygood v. Quarterman*, 239 F. App'x 39, 42 (5th Cir. Jun. 14, 2007) (citing *Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir. 1991)) (state court's denial of a motion for a new trial does not necessarily constitute a violation of a federal constitutional right)).

Further, petitioner contends the state court arrived at a conclusion that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Rec. Doc. 10 at 3. Petitioner believes the state court arrived at conclusions contrary to that reached by the Supreme Court on a questions of law, or the state court decided the case differently than the Supreme Court on a set of materially indistinguishable facts. *Id*. at 4. Petitioner also claims "the state court identified the correct legal principle but unreasonably applied that principle to the facts of the petitioner's case or has reached a decision based on an unreasonable factual determination." *Id*.

18

Petitioner fails to bring novel arguments to support this generalized and vague objection. The Magistrate Judge concluded petitioner's previously failed attempt to show the state-court's decision to reject his ineffective assistance of counsel claim was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." Rec. Doc. 9 at 37. Petitioner has not offered any objection to this opinion.

**C. Objection to the ruling on claims 1 and 2**

Petitioner's final objection simply restates the original claims in his application (Rec. Doc. 3-1) and fails to present novel arguments in his objection to the ruling on claims 1 and 2. Rec. Doc. 10 at 4-9. As other district courts have noted, a petitioner's objections to the Magistrate Judge's Report and Recommendation (Rec. Doc. 9) "are to be specific and are to address only those portions of the proposed findings to which the party objects." *Talbert v. Lynch*, No. PE:16-CV-00018-RAJ, 2017 WL 11236935, at *3 (W.D. Tex. Feb. 17, 2017). Further, there is "no factual objection raised when a petitioner merely reurges arguments" from the original petition. *Id*. (citing *Edmond v. Collins*, 8 F.3d 290, 293 (5th Cir. 1993)).

In *Talbert*, the petitioner objected to the Magistrate Judge's Report and Recommendations by rehashing "his original claims concerning his conviction for illegal re-entry which he claims he

19

never committed." *Id.* Petitioner also made a general objection that the Magistrate Judge's "decision was vague, and must be consider[ed] as void." *Id.* (internal citation omitted). With respect to arguments raised by a petitioner's objection, the Western District of Texas noted: "it is improper for an objecting party to attempt to relitigate the entire contents of the filing before the Magistrate Judge by submitting papers to a district court, which are nothing more than a rehashing of the same arguments and positions taken in the original and amended claims submitted to the Magistrate Judge." *Id.* Similar to the petitioner in *Talbert*, petitioner Kitzler's objection includes arguments copied verbatim from his original petition. Rec. Doc. 3-1. Thus, there is nothing more for this Court to consider.

    New Orleans, Louisiana this 11th day of August, 2023

SENIOR UNITED STATES DISTRICT JUDGE